[S.F. No. 24086. July 3, 1980.]

JOHNS-MANVILLE PRODUCTS CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
REBA RUDKIN, Real Party in Interest.

466

COUNSEL

Moore, Clifford, Wolfe, Larson & Trutner and Cyril Viadro for Petitioner.

Warren L. Hanna, Michael G. Lowe and Hanna, Brophy, MacLean, McAleer & Jensen as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Bryce C. Anderson, George W. Kilbourne and Steven Kazan for Real Party in Interest.

Marrs A. Craddick, Craddick & Candland, Charles Bond, Judith M. Mears, Peter H. Weiner, Patricia M. Gates, Robert E. Cartwright, Wylie Aitken, Edward I. Pollock, Glen T. Bashore, Stephen I. Zetterberg, J. Nick DeMeo, Sanford M. Gage, Stephen L. Odgers, Harvey R. Levine, Leonard Sacks and Joseph Posner as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MOSK, J.**—Section 3600 of the Labor Code provides that an employer is liable for injuries to its employees arising out of and in the course of employment, and section 3601 declares that where the conditions of

workers' compensation exist, the right to recover such compensation is the exclusive remedy against an employer for injury or death of an employee.[1] The issue to be decided in this proceeding is whether an employee is barred by these provisions from prosecuting an action at law against his employer for the intentional torts of fraud and conspiracy in knowingly ordering the employee to work in an unsafe environment, concealing the risk from him, and, after the employee had contracted an industrial disease, deliberately failing to notify the state, the employee, or doctors retained to treat him, of the disease and its connection with the employment, thereby aggravating the consequences of the disease.

---

[1] All references are to the Labor Code, unless otherwise noted.

Section 3600 provides in part: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: "(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured employee.

"(e) Where the injury is not intentionally self-inflicted.

"(f) Where the employee has not willfully and deliberately caused his own death.

"(g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor."

Section 3601 provides in part: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is...the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in either of the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee. . . .

"(b) An act which will not sustain an independent action for damages against such other employee under paragraph (1) or (2) of subdivision (a) of this section may nevertheless be the basis of a finding of serious and willful misconduct under Section 4553 or 4553.1, if (1) such other employee is established to be one through whom the employer may be charged under Section 4553; (2) such act of such other employee shall be established to have been the proximate cause of the injury or death; and (3) such act is established to have been of a nature, kind, and degree sufficient to support a finding of serious and willful misconduct under Section 4553 or 4553.1.

We conclude that while the workers' compensation law bars the employee's action at law for his initial injury, a cause of action may exist for aggravation of the disease because of the employer's fraudulent concealment of the condition and its cause.

Reba Rudkin, real party in interest (hereinafter plaintiff), brought an action against Johns-Manville Products Corporation, his employer for 29 years (defendant) and others,[2] alleging as follows:

Defendant is engaged in mining, milling, manufacturing, and packaging asbestos. Plaintiff worked in its Pittsburg, California, plant for 29 years beginning in February 1946, and he was continuously exposed to asbestos during that period. As a result of the exposure, he developed pneumoconiosis, lung cancer, or other asbestos-related illnesses.

The defendant corporation has known since 1924 that long exposure to asbestos or the ingestion of that substance is dangerous to health, yet it concealed this knowledge from plaintiff, and advised him that it was safe to work in close proximity to asbestos. It failed to provide him with adequate protective devices and did not operate the plant in accordance with state and federal regulations governing dust levels.

In addition, the doctors retained by defendant to examine plaintiff were unqualified, and defendant did not provide them with adequate information regarding the risk of asbestos exposure. It failed to advise these doctors of the development of pulmonary disease in plaintiff or of the fact that the disease was the result of the working conditions at the plant, although it knew that his illness was caused by exposure to asbestos. Finally, defendant willfully failed to file a First Report of Occupational Injury or Illness with the State of California regarding plaintiff's injury, as required by law. Had this been done, and if the danger from asbestos had been revealed, plaintiff would have been pro-

---

"(c) In no event, either by legal action or by agreement whether entered into by such other employee or on his behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under paragraph (1) or (2) of subdivision (a) of this section.

"(d) No employee shall be held liable, directly or indirectly, to his employer, for injury or death of a coemployee except where the injured employee or his dependents obtain a recovery under subdivision (a) of this section."

[2]Also joined in the action are several other Johns-Manville corporations, two doctors who treated plaintiff for his illness, and numerous persons sued fictitiously. The complaint contains nine causes of action, but only the third and fourth, alleging that defendant was guilty of fraud and conspiracy as plaintiff's employer, are at issue here.

tected. Each of these acts and omissions was done falsely and fraudulently by defendant, with intent to induce plaintiff to continue to work in a dangerous environment. Plaintiff was ignorant of the risks involved, and would not have continued to work in such an environment if he had known the facts.

In a separate cause of action plaintiff alleged that defendant knowingly conspired with others to perpetrate the acts set forth above.

The complaint sought compensatory and punitive damages, including compensation for the cost of medical care which plaintiff was required to obtain in order to treat his illness.

Defendant filed an answer alleging, inter alia, that the action was barred under section 3601. It requested the trial court to take judicial notice of an application filed by plaintiff seeking workers' compensation benefits for disability caused by "[e]xposure to asbestos." Defendant moved for judgment on the pleadings on the ground that section 3601 bars the action. The trial court denied the motion. In this proceeding for a writ of mandate, defendant seeks to set aside the trial court's order.

■ According to a brief filed on plaintiff's behalf, he died of lung cancer after the petition for writ of mandate was filed. The issues presented are not moot, however, since an action for personal injuries survives the death of the plaintiff. (Prob. Code, § 573.)[3]

For purposes of reviewing the trial court's denial of defendant's motion, we must accept as true the allegations of plaintiff's complaint. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3].)

The primary focus of the dispute between the parties centers upon the question whether section 4553 is intended to cover the intentional acts of employers which cause employee injuries.[4] The section provides

---

[3]The present action was consolidated with several others filed by former employees at defendant's Pittsburg plant. The allegations of all these complaints are identical, and our conclusion here will determine whether the plaintiffs in the additional actions may proceed to trial.

[4]The Department of Industrial Relations, and others have filed amicus curiae briefs on behalf of plaintiff, while the California Workers' Compensation Institute has filed

that "compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct" of the employer, not to exceed $10,000. Defendant urges that the penalty imposed upon employers by this section is a substitute for a common law right of action against an employer whose intentional misconduct results in injury, while plaintiff argues that such misconduct is distinguishable from the "serious and willful misconduct," described in section 4553, and therefore his complaint alleging intentional acts by defendant is cognizable in an action at law.

Defendant relies upon both the legislative history of the Workers' Compensation Act and cases interpreting the words "serious and willful misconduct" in support of its position.

Prior to 1917, the law allowed an employee a choice of remedies if an injury was caused by an employer's gross negligence or willful misconduct. He could either claim workers' compensation benefits or maintain an action at law for damages. (Stats. 1913, ch. 176, § 12(b), pp. 283-284.) In that year, however, this provision was deleted and a new section added specifying a one-half increase in compensation in the event of serious and willful misconduct by the employer. (Stats. 1917, ch. 586, § 6(b), p. 834.) This history, contends defendant, demonstrates that the right to seek additional compensation for injuries caused by the serious and willful misconduct of the employer was intended by the Legislature as a substitute for the right to seek damages in an action at law for such conduct.

Plaintiff claims that the reason for the amendment was a desire by the Legislature to equalize the treatment of employer and employee with regard to the commission of acts of serious and willful misconduct.[5] However, the argument is not convincing because it does not account for the repeal of the provision allowing an employee to bring an action at law for the employer's willful misconduct.

an amicus curiae brief in support of defendant. For literary convenience, this opinion will treat assertions made on behalf of both parties by amicus as though they had been made by the parties themselves.

[5] The act provided that an employee who is guilty of serious and willful misconduct would have his compensation reduced by 50 percent. (Stats. 1917, ch. 586, § 6(a)(4), p. 834.) That provision appears in section 4551, which sets forth some exceptions to the reduction penalty.

We find the historical background cited by defendant to be persuasive. The clear implication is that the addition in 1917 of the "exclusive remedy" limitation and the provision for a penalty for the willful misconduct of the employer was a substitute for the previous right of an employee to bring an action at law.

Next, defendant contends that the term "serious and willful misconduct" as used in section 4553 has the same meaning as intentional misconduct, and plaintiff may not avoid the bar of section 3601 merely by characterizing defendant's conduct as intentional. Defendant relies on *Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 117 [251 P.2d 955], in which the term "willful misconduct" as used in section 4553 was defined as conduct which "'necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact. . .*that danger is likely to result therefrom.*' [¶] 'Wilfulness necessarily involves the performance of a deliberate or intentional act or omission regardless of the consequences.'"[6] This definition expressly includes intentional conduct within the purview of section 4553.

Plaintiff counters that the Legislature recognized a difference between intentional misconduct and serious and willful misconduct because it has provided that an employee who is guilty of the former is precluded from recovering workers' compensation (§ 3600, subds. (d), (e), (f), (g)), whereas if he is injured as the result of his own serious and willful misconduct he only suffers a one-half reduction in compensation benefits (§ 4551).

The contention misconstrues these provisions. The only intentional misconduct of an employee which excludes his right to compensation is the deliberate infliction of injury upon himself, his participation in an

---

[6]Plaintiff asserts that decisions both before and after *Mercer-Fraser* found serious and willful misconduct on facts which did not meet the strict definition set forth in that case. (Citing, e.g., *Rogers Materials Co. v. Ind. Acc. Com.* (1965) 63 Cal.2d 717, 723 [48 Cal.Rptr. 129, 408 P.2d 737]; *Vega Aircraft v. Industrial Acc. Com.* (1946) 27 Cal.2d 529, 533-534 [165 P.2d 665]; *Parkhurst v. Industrial Acc. Com.* (1942) 20 Cal.2d 826, 829 [129 P.2d 113]; *E. Clemens Horst Co. v. Industrial Acc. Com.* (1920) 184 Cal. 180, 189 [193 P. 105, 16 A.L.R. 611].) We fail to comprehend how this circumstance assists plaintiff's argument that intentional acts may be distinguished from willful misconduct. In virtually all of the cases cited by plaintiff, it is recognized that an employer is guilty of serious and willful misconduct under section 4553 if he knows he is placing his employees in a dangerous position and fails to take precautions for their safety.

altercation in which he is the aggressor, or where his injuries are caused by intoxication. (See fn. 1, *ante*, p. 468.) These provisions were obviously designed, at least in part, to prevent an employee from injuring himself in order to collect compensation, to deter physical aggression by employees, and to prevent injuries due to intoxication. The fact that the Legislature chose to except these particular types of intentional acts from compensation coverage does not imply that all types of employee misconduct which may be described as intentional will preclude recovery of compensation. If, for example, the employee deliberately performs an act "with knowledge or appreciation of the fact...*that danger is likely to result therefrom*"—conduct which constitutes serious and willful misconduct under section 4551 (*Mercer-Fraser Co. v. Ind. Acc. Com., supra*, 40 Cal.2d 102, 117)—he is not precluded from recovering compensation but is only subject to a reduction of his recovery by one-half.[7]

In sum, the provisions of section 4553 were designed to penalize intentional misconduct of an employer, and the injuries which result from such acts are compensable under that section.

However, while the case law cannot be described as consistent, it reveals that in some exceptional circumstances the employer is not free from liability at law for his intentional acts even if the resulting injuries to his employees are compensable under workers' compensation. Indeed, in one unusual situation, despite the "exclusive remedy" provision of section 3601, an action at law was allowed for injuries incurred in the employment where the employer's conduct was negligent rather than intentional.[8]

First we consider cases in which the intentional acts of the employer have been held not to justify an action at law. Compensation was determined to be the exclusive remedy for injuries suffered in a case in

---

[7]*Hawaiian Pineapple Co. v. Ind. Acc. Com.* (1953) 40 Cal.2d 656, 664 [255 P.2d 431], holds that the term "serious and willful misconduct" is to be given the same meaning in sections 4551 and 4553. However, it does not discuss the provisions of subdivisions (d), (e), (f), and (g) of section 3600 or their relationship to section 4551.

[8]In *Duprey v. Shane* (1952) 39 Cal.2d 781, 793 [249 P.2d 8], a nurse who was employed by a chiropractor was treated by him for an industrial injury. We held that she could sue her employer for malpractice because in committing the tortious acts he was acting in his capacity as a doctor rather than as an employer. (See also *Baugh v. Rogers* (1944) 24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043]; *Douglas v. E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 110 [137 Cal.Rptr. 797].)

which the employer concealed the dangers inherent in the material the employees were required to handle (*Wright* v. *FMC Corp.* (1978) 81 Cal.App.3d 777, 779 [146 Cal.Rptr. 740]) or made false representations in that regard (*Buttner* v. *American Bell Tel. Co.* (1940) 41 Cal.App.2d 581, 584 [107 P.2d 439].) The same conclusion was reached on the basis of allegations that the employer was guilty of malicious misconduct in allowing an employee to use a machine without proper instruction. (*Law* v. *Dartt* (1952) 109 Cal.App.2d 508, 509 [240 P.2d 1013].)

The reason for the foregoing rule seems obvious. It is not uncommon for an employer to "put his mind" to the existence of a danger to an employee and nevertheless fail to take corrective action. (See, e.g., *Rogers Materials Co.* v. *Ind. Acc. Com., supra,* 63 Cal.2d 717, 723.) In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages. ■ It seems clear that section 4553 is the sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe.

Thus, if the complaint alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply

adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant, plaintiff's only remedy would be to prosecute his claim under the workers' compensation law.

But where the employer is charged with intentional misconduct which goes beyond his failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that the employer may be subject to common law liability. A physical assault by the employer upon the employee has been held to justify an action at law against the employer. (*Magliulo v. Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621]; see *Meyer v. Graphic Arts International Union* (1978) 88 Cal.App.3d 176, 178 [151 Cal.Rptr. 597]; contra, *Azevedo v. Abel* (1968) 264 Cal.App. 2d 451, 458-460 [70 Cal.Rptr. 710].) In *Ramey v. General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402 [343 P.2d 787], it was held that an action for fraud could be maintained against an employer who made misrepresentations regarding the employee's right to medical care and conspired with a third party to conceal from the employee that his injuries, which occurred while he was working, were caused by the third party against whom he had recourse. And in *Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063], we allowed an action at law against an insurer for assault, battery, and intentional infliction of emotional distress, based upon its deceitful conduct in investigating a workers' compensation claim.[9]

The reasons given in these cases for allowing a common law action for intentional misconduct of the employer vary. In *Magliulo* the rationale was based, at least in part, on the ground that since an employee may sue a fellow employee at law for assault (§ 3601, subd. (a)(1)), he should have the same right against his employer, and that an intentional assault by the employer has a questionable relationship to the general conditions of employment.

---

[9]It has also been held that damages for intentional infliction of emotional distress unaccompanied by physical injury may be sought in an action at law as an implied exception to the exclusive remedy provisions of the workers' compensation law because that system provides no remedy for a nonphysical injury in the employment. The court reasoned that the Legislature did not intend to deny an employee all redress for that tort. (*Renteria v. County of Orange* (1978) 82 Cal.App.3d 833, 841-842 [147 Cal.Rptr. 447].) Conversely, cases holding that workers' compensation is the sole remedy for such an injury are based upon the fact that physical injury resulted from the tort, and therefore the injury was compensable under workers' compensation. (*Gates v. Trans Video Corp.* (1979) 93 Cal.App.3d 196, 206 [155 Cal.Rptr. 486].)

*Ramey* held that even though the employee had previously recovered workers' compensation for the physical injury arising from the employment, the injury from the fraudulent concealment of his cause of action was distinct from the industrial injury and did not occur while he was performing services growing out of or incidental to his employment. The court declared that the Legislature never intended that an employer's fraud was a risk of the employment.

In *Unruh*, we recognized that an insurer ordinarily stands in the shoes of the employer when it investigates a claim for compensation (§§ 3850, 3852), and that its negligence in carrying out this duty must be remedied under the compensation law. However, we held that the immunity from common law liability was lost insofar as the insurer did not "remain in its proper role" but, rather, acted deceitfully in investigating the claim. A separate cause of action was allowed against the insurer for aggravation of the initial industrial injury, for which the plaintiff had already received compensation.[10]

The parties attempt to distinguish, harmonize, or explain these holdings. While we do not purport to find in them a tidy and consistent rationale, we perceive in *Magliulo, Meyer* and *Unruh* a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury. In *Magliulo, Meyer, Unruh*, and *Ramey*, the alleged misconduct consisted of assault or fraud and deceit. *Ramey* and *Unruh* distinguished between an initial injury and a later injury which is separate from but related to the first injury (*Ramey*) or aggravates the initial injury (*Unruh*).

---

[10]The holding that the insurer could be sued as a "person other than the employer" (§ 3852) was based upon the "dual capacity" doctrine enunciated in *Duprey v. Shane, supra*, 39 Cal.2d 781, and followed in *Douglas v. E. & J. Gallo Winery, supra*, 69 Cal.App.3d 103. By analogy to *Duprey*, it was determined that the insurer in *Unruh* was "invested with a dual personality" so that while it was performing its proper role within the compensation system it stood in the position of plaintiff's employer and was immune from suit, but when it stepped outside that role by committing an intentional tort, it "became a person other than the employer" like the doctor in the *Duprey* case, and subject to liability at law. We recognize that *Unruh* involved the liability of the insurer as the alter ego of the employer rather than, as here, the employer itself. Nevertheless, the distinction between liability for negligent conduct which aggravates an industrial injury and intentional conduct which has the same result is significant in the context of the present case.

■ In the present case, plaintiff alleges that defendant fraudulently concealed from him, and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions. These allegations are sufficient to state a cause of action for aggravation of the disease, as distinct from the hazards of the employment which caused him to contract the disease.

This approach is not inconsistent with cases which hold that aggravation of an industrial injury by negligent treatment or the negligent failure to provide treatment may not be made the basis of an action at law against the employer or its insurer. (*Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 543-544 [10 Cal.Rptr. 511]; *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731, 735-737 [342 P.2d 976]; *Hazelwerdt* v. *Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759, 761-765 [321 P.2d 831].) *Unruh* distinguished between negligent and intentional misconduct in this regard holding, as we have seen, that an insurer which engages in intentional misconduct following a compensable injury may be held liable in an action at law for aggravation of the injury. (7 Cal.3d 616 at pp. 626-628.)

In *Magliulo* it was said that although an employee might be willing to surrender his right to an action at common law for the ordinary type of work-related injuries, it is not equally clear that when he accepts employment he contemplates his employer might assault him or if an assault occurs he must be satisfied with the additional compensation provided by section 4553. So, here, it is inconceivable that plaintiff contemplated defendant would, as he alleges, intentionally conceal the knowledge that he had contracted a serious disease from the work environment, thereby aggravating the disease, and by accepting employment he would surrender his right to damages at law for such conduct.[11]

[11]Although our holding herein is based in part on an analogy to the *Magliulo-Ramey-Unruh* line of decisions, we are not to be understood thereby as resolving any conflict between *Magliulo* and *Azevedo* v. *Abel* (1968) *supra*, 264 Cal.App.2d 451, 458-460, as to an employee's right to maintain an action at law against his employer for a physical assault by the latter related to the employment. That issue is not presented in this case, and we do not purport to address it.

Since the question at issue here was decided on the pleadings the record contains no evidence as to the difficulty of separating the damage caused by the onset of the disease suffered by plaintiff from its subsequent aggravation. There is a considerable body of medical literature regarding disease caused by the ingestion of asbestos (see *Borel* v. *Fibreboard Paper Products Corporation* (5th Cir. 1973) 493 F.2d 1076, 1083-1085), and at trial the parties will undoubtedly introduce medical evidence in support of their

Moreover, defendant's alleged actions are more blameworthy than the insurer's conduct in using "evidence perfidiously" procured in *Unruh*, and, if established at trial, are so egregious and the societal interest in deterring similar conduct in the future is so great that there is justification for awarding punitive damages. Such a penalty, however, may be afforded only in an action at law.[12]

It bears emphasis that in allowing an action at law in this case we do not quarrel with the courts which have strictly construed section 3601 so as to "preserve the spirit of the act and to prevent distortion of its purposes." (*Eckis* v. *Sea World Corp.* (1976) 64 Cal.App.3d 1, 7 [134 Cal.Rptr. 183]; *Saala* v. *McFarland* (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400]; *Deauville* v. *Hall, supra,* 188 Cal.App.2d 535, 546-547; *Noe* v. *Travelers Ins. Co., supra,* 172 Cal.App.2d 731, 737.) But we do not subscribe to the fears of defendant that a holding in plaintiff's favor would open up a Pandora's box of actions at law seeking damages for numerous industrial diseases. Restricting plaintiff's damages to aggravation of the disease caused by the alleged fraud of defendant would substantially limit the number of such actions.

We conclude the policy of exclusivity of workers' compensation as a remedy for injuries in the employment would not be seriously undermined by holding defendant liable for the aggravation of this plaintiff's injuries, since we cannot believe that many employers will aggravate the effects of an industrial injury by not only deliberately concealing its existence but also its connection with the employment. Nor can we believe that the Legislature in enacting the workers' compensation law intended to insulate such flagrant conduct from tort liability. Finally, although plaintiff filed an application for workers' compensation and may receive an award in that proceeding, double recovery may be avoided by allow-

---

contentions regarding causation and aggravation. We note for the guidance of the court on retrial that if plaintiff is successful in establishing that his injury was aggravated by the wrongful acts of defendant as alleged in the complaint, the burden of apportioning damages between the initial contracting of the disease and its subsequent aggravation is upon defendant, since the problem of apportionment emanates from defendants' wrongful acts. (Cf. *Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 455-456 [161 Cal.Rptr. 783, 605 P.2d 422]; *Summers* v. *Tice* (1948) 33 Cal.2d 80, 88 [199 P.2d 1, 5 A.L.R.2d 91].)

[12]The 50 percent increase in the award authorized by section 4553 is additional compensation and does not represent exemplary damages. (*State Dept. of Corrections* v. *Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 891 [97 Cal.Rptr. 786, 489 P.2d 818]; *E. Clemens Horst Co.* v. *Industrial Acc. Com., supra,* 184 Cal. 180, 193.)

ing the employer a setoff in the event plaintiff is awarded compensation for the aggravation of his injury in that proceeding and in the present case as well. (See *Unruh* v. *Truck Insurance Exchange, supra*, 7 Cal.3d 616, 636.)

The writ is denied.

Bird, C. J., Tobriner, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

The net effect of the majority opinion is to discourage employers from engaging in medical programs designed to minimize the risks and effects of occupational disease. By imposing on the employer tort liability for compensatory and punitive damages in addition to liability for workers' compensation benefits, today's decision can only deter employer initiation and maintenance of such programs. Moreover, sound public policy expressed in constitutional and statutory provisions make clear that imposition of such tort liability in favor of a worker covered by compensation benefits is not permitted unless there is specific constitutional or statutory exemption. The majority do not even attempt to find language permitting such exception.

The portions of the complaint held by the majority to state a cause of action may be summarized as follows: Aware since 1924 of the dangers of working with asbestos, Johns-Manville retained physicians and surgeons to examine plaintiff and other of its employees. Johns-Manville failed to advise the retained physicians "of the development of chest pathology and/or pulmonary disease in plaintiff and other employees or that such condition was the result of working conditions at said defendant's plant." The foregoing were fraudulent acts in that Johns-Manville intended to induce plaintiff to continue working in a dangerous environment. Had plaintiff been aware of his condition, he would have terminated his employment, avoiding further injury.

## Public Policy

There are a number of valuable and necessary industries in our society that—unfortunately—involve substantial risk of occupational disease. Aware of these risks, many employers provide special medical programs designed to minimize the risk. Our workers' compensation law provides benefits for those who, despite such programs, become disabled by occupational disease. Ordinarily, those benefits are in lieu of employer liability in tort for damages.

Today's decision holds that when an employer adopts a special medical program to minimize the risk of an occupational disease, his potential exposure for liability for the disease will include liability in tort for compensatory and punitive damages in addition to the compensation benefits ordinarily available to injured workers. I am afraid that today's lesson will not be lost on employers: Should they try to remain ignorant of employees' health problems and thereby disengage themselves from special medical programs for fear of triggering today's tort liability?

The employers' potential loss and thus the effect of today's decision cannot be minimized. Losses from punitive awards may not be insured against (Ins. Code, § 533; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 278-279 [54 Cal.Rptr. 104, 419 P.2d 168]; *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 36-39 [151 Cal.Rptr. 494]), and tort liability insurers traditionally exempt claims for willful misconduct (*id.*) and for claims like that asserted by plaintiff where workers' compensation is available.

The majority have drawn a classification between employers who do not engage in medical programs to discover occupational illnesses and thus will have their liability limited to workers compensation, and employers who maintain such programs and thereby run the risk of tort liability in addition to compensation liability. If such a classification is warranted, does not public policy require the exposure to liability be reversed? From the employee point of view there is little reason to discriminate between victims of industrial injury based on concealment of the illness. Extent of disability should determine recovery in all cases.

CONSTITUTIONAL AND STATUTORY PROVISIONS

Article XIV, section 4 of our Constitution provides: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, . . . A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers . . . to the extent of relieving from the consequences of any injury . . . sustained by workers in the course of their employment . . . full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury . . . and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government."

Pursuant to constitutional authorization the Legislature enacted a "complete system" of workers' compensation. (Lab. Code, § 3201.)[1] The complete system established by the Legislature reflects a compromise providing—with few exceptions—that workers will be compensated by employers without regard to the latters' fault for injuries arising out of and in the course of employment, but that tort liability based on fault shall not be permitted.

Thus, section 3600 states: "Liability for the compensation provided by this division, *in lieu of any other liability whatsoever* to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment. . . ."[2] (Italics added.)

---

[1] Unless otherwise indicated all statutory references are to the Labor Code.

[2] Section 3600 provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (b) Where, at the time of the injury, the employee is performing service

Section 3601 states: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in either of the following cases: [¶] (1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee. [¶] (2) When the injury or death is proximately caused by the intoxication of such other employee. . . . [¶] (c) In no event, either by legal action or by agreement whether entered into by such other employee or on his behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under paragraph (1) or (2) of the subdivision (a) of this section. . . ."

By providing that employer liability for compensation is "in lieu of any other liability whatsoever" (§ 3600) and an employee's "exclusive remedy" against the employer is recovery of compensation, the Legislature has made clear beyond doubt that tort action against the employer is prohibited *unless the employee can bring himself within one of the statutory exceptions.* No such exception is applicable here and the majority—obviously unable to satisfactorily deal with the issue—elect to ignore the absence of statutory exception.

---

growing out of and incidental to his employment and is acting within the course of his employment. [¶] (c) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (d) Where the injury is not caused by the intoxication of the injured employee. [¶] (e) Where the injury is not intentionally self-inflicted. [¶] (f) Where the employee has not willfully and deliberately caused his own death. [¶] (g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor. [¶] (h) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where such activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision. Failure of the employer to post such a notice shall not constitute an expression of intent to waive the provisions of this subdivision."

As the majority recognize, the provisions of sections 3600 and 3601, precluding tort actions for damages against employers, are applicable to intentional injuries caused by the employer and arising out of and in the course of employment. (E.g., *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975-976, fn. 11 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 117 [251 P.2d 955]; *Gates* v. *Trans Video Corp.* (1979) 93 Cal. App.3d 196, 204-206 [155 Cal.Rptr. 486]; *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 534 [151 Cal.Rptr. 828]; *Wright* v. *FMC Corp.* (1978) 81 Cal.App.3d 777, 779 [146 Cal.Rptr. 740]; *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731, 733 et seq. [342 P.2d 976]; *Hazelwerdt* v. *Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759, 763 et seq. [321 P.2d 831]; *Law* v. *Dartt* (1952) 109 Cal.App.2d 508, 509 [240 P.2d 1013].)

Further, the fact that the employer's conduct might be considered fraudulent, as the majority recognize, is not sufficient alone to permit recovery in tort where compensation is available. (*Wright* v. *FMC Corp., supra*, 81 Cal.App.3d 777, 779; *Buttner* v. *American Bell Tel. Co.* (1940) 41 Cal.App.2d 581, 584 [107 P.2d 439].)

When compensation benefits are required by law, the fact that employer conduct may have aggravated the injury does not itself furnish a basis to ignore the exclusivity of the statutory remedy. "[I]t is clear that where an employee is injured in an industrial accident, and the employee seeks recovery for . . . the aggravation from his employer or from his insurance carrier, the Industrial Accident Commission has exclusive jurisdiction to determine this claim against the employer and his carrier." (*Duprey* v. *Sahne* (1952) 39 Cal.2d 781, 790 [249 P.2d 8]; *Hazelwerdt* v. *Industrial Indem. Exchange, supra*, 157 Cal.App.2d 759, 762.)

The employer's failure to provide medical care to relieve from the effects of industrial injury also furnishes no basis for an independent action in tort. (*Noe* v. *Travelers Ins. Co., supra*, 172 Cal.App.2d 731, 733 et seq.) In the last cited case, Justice Tobriner noted the danger of permitting tort actions against employers and insurers: "[I]f delay in

medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of *partial disintegration.* In the practical operation of the plan, minor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could become the bases of independent suits, and these could be many and manifold indeed. The *uniform* and *exclusive* application of the law would become *honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified.*" (Italics added; 172 Cal.App.2d at p. 737.)

There can be no question in the instant case that plaintiff is seeking recovery for injuries arising out of and in the course of employment. The complaint asserts the injury was due to working with asbestos.

Furthermore, employer liability is sought to be predicated on fraud in providing medical examinations and X-rays for an employee, and the medical examination and X-ray program must be considered within the employment context because the program is a benefit furnished by the employer for the employees incident to employment. (*Saala* v. *McFarland* (1965) 63 Cal.2d 124, 129 [45 Cal.Rptr. 144]; *Fireman's Fund Etc. Co.* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 529, 532-533 [247 P.2d 707]; *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 503, 504-507 [125 Cal.Rptr. 872]; *Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 472 [87 Cal.Rptr. 563].) Accordingly, unless there is a statutory exemption, any injury suffered by the employee as a result of the medical examination program is compensable under the compensation act without regard to fault, but again liability in tort is not permitted.

Because plaintiff's injury arose out of and in the course of employment, and there is no statutory exception, tort liability of the employer may not be predicated upon intentional misconduct, including fraud, aggravation of a prior injury, or failure to provide proper medical care.

The majority rely upon a number of cases which have permitted tort actions against the employer based on the language of relevant statutes. (*Duprey* v. *Shane, supra,* 39 Cal.2d 781; *Meyer* v. *Graphic Arts In-*

*ternational Union* (1978) 88 Cal.App.3d 176 [151 Cal.Rptr. 597]; *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447]; *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621]; *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal. App.2d 386 [343 P.2d 787]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063].) In each case, the court relied on language of the relevant statute in concluding there to be a basis for permitting tort in addition to compensation liability. None of the cases relied upon support the conclusion of tort liability in the instant case because the statutory language held to permit recovery in those cases does not do so in the instant case.

The *Duprey* case involves the dual capacity or the two-hat doctrine. The employer or insurer in those cases acts not only as an employer but also in a second capacity in causing or aggravating the injury. Thus in *Duprey* the employer who was a doctor undertook to treat his nurse for industrial injury. The court recognized that while doctors treating victims of industrial accident ordinarily may be held liable in tort for malpractice, an employer is ordinarily not liable in tort to an employee for aggravation of an injury caused by malpractice. However, the court concluded that having undertaken treatment in a doctor-patient relationship, the employer should be liable in tort for acts of malpractice. In excluding tort liability, sections 3600 and 3601 exclude liability of the "employer." *Duprey* is based on the construction of that term as excluding liability of the doctor when acting as such. In providing medical examinations and X-rays in the instant case, Johns-Manville, as we have seen, acted only in its employer capacity. The dual capacity or two-hat doctrine is not applicable here.

In *Magliulo* and in *Meyer*, which followed *Magliulo*, the employer in each case was alleged to have assaulted an employee. The cases hold that there is a statutory exception to the rule that compensation is an exclusive remedy in the case of an unprovoked assault. (§ 3601, subd. (a); 47 Cal.App.3d at pp. 779-780.) There is no statutory exemption applicable in the instant case similar to the one provided for in section 3601.

In *Ramey* and *Renteria*, the actions for damages were for injuries not compensable under the compensation law. In *Ramey*, the employer

fraudulently induced the injured employee to forego tort action against a third party tortfeasor. The claim in *Ramey* was not for the employee's physical injury but for his economic injury, fraudulent deprivation of a cause of action. In *Renteria*, an employee seeking to recover against his employer for intentional infliction of emotional distress, did not allege any physical disability or injury. The court noted he would not be entitled to recover in compensation proceedings. (82 Cal.App.3d at pp. 839-842.)[3] Subsequent cases in which it has been alleged that intentional infliction of emotional distress caused physical injury have distinguished *Renteria*, holding that compensation is the exclusive remedy. (See *Gates v. Trans Video Corp., supra*, 93 Cal.App.3d 196, 206; *Ankeny v. Lockheed Missiles & Space Co., supra*, 88 Cal.App.3d 531, 535-536.) By contrast, the aggravation of the initial injury arising from the employer's fraudulent conduct in the instant case is an injury compensable exclusively under the compensation law.

In *Unruh*, an investigator of the compensation carrier misrepresenting "his capacity and intentions" toward an injured employee, befriended her and enticed her to visit Disneyland where he violently shook a rope bridge causing her injury. When films surreptitiously made of the employee's conduct were exhibited at a compensation hearing, she suffered a nervous breakdown. The court concluded that the insurer had departed from its proper role as a carrier, and relying upon *Duprey* concluded that under the dual personality doctrine the action might be maintained on the basis that the insurer in fraudulently obtaining evidence was acting in a capacity other than as an insurer. (7 Cal.3d at p. 630 et seq.) As noted above, in providing for physical examinations and X-rays for employees facing the risk of occupational illness, Johns-Manville continued to act as an employer.

The foregoing cases relied upon by the majority are each based on an interpretation of a statutory provision. The instant case cannot be brought within any statutory exemption. The majority do not even attempt to point to a statutory or constitutional provision permitting tort liability herein.

---

[3]In *Renteria* the court concluded: "'If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injuries being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort.' (2A Larson, Workmen's Compensation Law § 68.34, pp. 13-31, 13-32.)" (82 Cal.App.3d at p. 842.)

Courts may interpret the Constitution and statutes. But to ignore constitutional provisions granting the Legislature plenary authority, and legislative enactments expressly and unambiguously dealing with applicable law, is not only judicial usurpation of the legislative function but also judicial arrogance destructive of society's confidence in the rule of law.

The majority properly reject the offered but erroneous grounds of statutory interpretation. Nevertheless, they then proceed to adopt a rule contrary to legislative direction. In the face of constitutional delegation to the Legislature and express legislative mandate, and in the absence of any asserted constitutional or statutory basis for their action, the majority arrogantly have usurped the legislative function in violation of the separation of powers doctrine and thus thwart the people's will.

A number of occasions have arisen in the past where members of the court have disagreed as to the meaning of constitutional and statutory provisions or as to the proper rule of law to be applied by courts in the absence of such provisions. But no such disagreement exists in this case. The majority simply refuse to address the constitutional plenary grant of power and the Legislature's express prohibition against tort action.

We all have compassion for those incurring industrial injury or industrial disease. The workers' compensation law reflects that compassion —providing compensation for all employees suffering employment injury or illness—whether or not the employer is at fault.

Permitting both compensation benefits and tort recovery from the employer for employment injury creates "partial disintegration" as described by Justice Tobriner of our system of workers' compensation. Realizing that tort recovery is now allowed by our court when the employer is at fault, the Legislature may conclude that compensation is the determinative remedy only where the employer is not at fault, and it may refuse to adjust compensation benefits to reflect the basic compromise. Further, the level of compensation to be fixed by the Legislature will take into account employer costs, and today's decision means employers must obtain liability insurance against employee injury as well as compensation insurance. The majority's decision providing special tort award for a few of those suffering occupational illness jeopardizes the amount of the benefits available to the many victims of industrial illness and injury.

I would issue the writ and order respondent court to grant the motion for judgment on the pleadings.

Richardson, J., concurred.

On August 28, 1980, the opinion was modified to read as printed above. The concurring and dissenting opinion of Manuel, J., was thereupon withdrawn.