Joseph TEKLINSKY, Plaintiff,

v.

OTTAWA SILICA CORPORATION, a Delaware Corporation, Johns-Manville Sales Corporation, a Delaware Corporation, Celotex Corporation, a Delaware Corporation and successor to Phillip Carey Corporation, and Pennwalt Corporation, a Pennsylvania Corporation, Jointly and Severally, Defendant.

Civ. No. 82–71775.

United States District Court,
E.D. Michigan, S.D.

Oct. 21, 1983.

Darlene Domanik, Southfield, Mich., for plaintiff.

Delmer C. Gowing, III, Bloomfield Hills, Mich., for defendants.

## OPINION

THORNTON, District Judge.

This matter is before the Court on Defendant Pennwalt Corporation's Motion for Summary Judgment on the ground that plaintiff's claim is barred by the exclusivity provision of the Michigan Workers Disability Compensation Act, M.C.L. § 418.131; M.S.A. § 17.237(131).

The plaintiff was employed by Pennwalt Corporation for approximately thirty years, until 1979, when he was determined to be permanently disabled by "lung pathology" due to "exposure to atmospheric pollutants". The plaintiff was awarded workers' compensation benefits in April, 1982. In 1982, plaintiff commenced an action against various manufacturers and suppliers of asbestos fibre products. In June, 1982, the plaintiff amended his complaint to add Pennwalt Corporation as a defendant.

The defendant relies on the following provisions of the Michigan Workers Disability Compensation Act in support of this motion:

M.C.L. § 418.131; M.S.A. § 17.237(131): The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer....

M.C.L. § 418.301; M.S.A. § 17.237(301): (1) An employee, who received a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act....

The defendant further relies on the case of *Genson v. Bofors-Lakeway*, 122 Mich.App. 470, 332 N.W.2d 507 (1983) in support of its contention that Michigan law provides no exception to the exclusivity provision based on a claim for intentional tort.

The defendant also relies on the fact that on April 13, 1982, the plaintiff's injury was determined to be one which is compensable under the Workers Disability Compensation Act by the Decision of the Bureau of Workers Disability Compensation. The Bureau concluded that the plaintiff "is found to be disabled as the result of a dust disease within the meaning of the act, namely pneumoconiosis."

The plaintiff contends that Pennwalt Corporation is liable for his condition despite the exclusive remedy provision of the Act because defendant knew, from x-rays ordered by its company physician, that the plaintiff had developed serious medical problems including asbestosis, yet deliberately withheld this information from him. Plaintiff states:

In January 1976, Plaintiff was sent by Defendant to a company physician, Dr. Robert Hartquist, who ordered chest x-rays and a pulmonary function test. He reported to Defendant that Plaintiff had emphysema, obstructive pulmonary disease and fibrosis of the lung. He advised Defendant that Plaintiff should not

be exposed to dust or fumes (See Exhibit 1 attached hereto). In November 1977 another company physician, Dr. Ruesink, referred Plaintiff to Wyandotte General Hospital for chest x-rays. This study confirmed the obstructive pulmonary disease and found congestive heart failure, as well as signs of asbestosis (See Exhibit 2 attached hereto). When Defendant received these reports, it completely failed to act on them. Defendant did contact Dr. Hartquist for clarification of his advised restriction (See Exhibit 3 attached hereto) and the doctor's response was that Plaintiff could only remain at his job if given proper respiratory protection. Defendant did nothing. Plaintiff was not removed from the dusty work environment, he was not told to wear a protective respirator, and most importantly, he was never told of the disease which he had contracted. Because of Defendant's concealment of this information and advice, Plaintiff was unaware of his condition and remained, exposed on his job and untreated. This continuing exposure aggravated his condition, which progressively worsened until he was forced to discontinue working in 1979 at the age of fifty-one.

(Plaintiff's Answer to Defendant Pennwalt's Motion for Summary Judgment at 2)

There is no case under Michigan law which deals with the specific factual situation alleged herein. In the *Genson* case, cited by defendant, the Michigan Court of Appeals' panel declined to recognize a separate exception to the exclusive remedy provision of the Workers Disability Compensation Act for intentional tort where the plaintiff claimed that the defendant knew the hazards and dangers of exposure to large quantities of the chemical benzidine but "maliciously, intentionally and wantonly" withheld this information from plaintiffs. 122 Mich.App. at 473, 332 N.W.2d 507. The panel concluded that the exceptions to the exclusive remedy provision were derived from the Act and were encompassed within the language of § 301; i.e. (1) were the conditions of liability under the Act present at the time of plaintiff's

injury?; (2) Is the plaintiff seeking to recover damages for personal injuries?; and, (3) Is plaintiff's suit based upon the employer-employee relationship? 122 Mich. App. at 474, 478, 332 N.W.2d 507. The Court then stated:

> Most cases involving intentional torts will fall within one or the other of these exceptions. As no language in the statute suggests a separate exception for intentional torts, we can only create such an exception through theorization about legislative intent without regard to the language of the statute or through utilization of one of the unsatisfactory fictions discussed by Larson. [2 A Larson, Workmen's Compensation Law, § 68.11, pp 13–1–13–2] We cannot say either that the Legislature clearly intended a separate exception for intentional torts not falling within one of the other exceptions or that public policy so clearly requires such a result as to justify the creation of a legal fiction.

122 Mich.App. at 478, 332 N.W.2d 507.

The Michigan courts have not consistently so held. See, *Kissinger v. Mannor*, 92 Mich.App. 572, 285 N.W.2d 214 (1979); *Seals v. Henry Ford Hospital*, 123 Mich. App. 329, 333 N.W.2d 272 (1983); *Burgess v. Halloway Const. Co.*, 123 Mich.App. 505, 332 N.W.2d 584 (1983). Nor has any Michigan Court apparently addressed a situation where the alleged conduct of the employer involved concealment from an employee of a physical condition after it has occurred, resulting in further exposure, neglect of treatment, and resultant exacerbation of the condition. This type of alleged deceit is somewhat different from the concealment by an employer of asbestos or similar hazards leading to the original compensable condition of an employee. See, 2A A. Larson, The Law Of Workmen's Compensation § 68.32(c) (1982).

The plaintiff herein contends that his position is wholly consistent with the spirit of the Workers Compensation statute:

> The purpose of the Worker's Compensation Act is to ensure speedy compensa-

tion and treatment for work related injuries. Under the result postulated by Defendant, an employer, by clever manipulation of the exclusive remedy provision of the ... Act could withhold benefits rightfully due the employee by concealing the existence of injury from him and keeping him on the job indefinitely ... the framers of the Act plainly and on its fact [sic] did not intend such a result ... Suppose, for example, that 'E' is employed at the 'C' company. Suppose further that E has gone to the company clinic where he was diagnosed as having a serious work-related heart condition. The doctor notifies E's employer 'P'. Instead of advising E of the deteriorated state of health, P intentionally withholds this information, thereby representing that E may continue to work safely. E then remains in the hazardous environment where his heart condition steadily worsens and he has a major heart attack. If E does not survive the attack and has no family, P will pay no compensation benefits at all. If E does survive the heart attack but can no longer perform his job, it is true that he will finally collect compensation payment, but P has managed to cut his losses by delaying the onset of compensation payment and by delaying the need to hire a replacement.

The latter scenario is exactly the situation in the present case. Plaintiff was exposed to toxic substances at work. A company physician diagnosed him by having fibrotic lung disease. Defendant was promptly notified and advised to remove plaintiff from the contaminated environment or at least provide suitable respiratory protection. Defendant did neither. Instead Defendant willfully subjected Plaintiff to an additional two-to-three years of exposure to these toxic substances, a decision that was not Defendant's to make.

(Plaintiff's Response to Defendant's Reply Brief at 2–3).

In *Johns-Manville, etc. v. Contra Costa, etc.*, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (1980) the California Supreme Court analyzed the issues presented herein. The Court concluded that where the plaintiff alleged that defendant fraudulently concealed from him, and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions, a cause of action was stated for *aggravation* of the disease, as distinct from the hazards of the employment which caused him to contract the disease. 612 P.2d at 955. The Court reaffirmed that, if the employer's only alleged misconduct was intentionally concealing the initial hazard of the work environment because of asbestos exposure, and failing to provide protective devices, the only remedy would be under the Compensation Act, even if governmental regulations on dust levels were violated. *Id.* at 954. The second injury—concealing the existence of the first—was an independent wrong and hence not within the exclusive remedy clause. *Id.*

The Court further concluded that the policy of exclusivity of workers' compensation as a remedy for injuries in the employment would not be seriously undermined by this result: "since we cannot believe that many employers will aggravate the effects of an industrial injury by not only deliberately concealing its existence but also its connection with the employment. Nor can we believe that the Legislature in enacting the workers' compensation law intended to insulate such flagrant conduct from tort liability." Id at 956.

Finally, the Court indicated that double recovery from any compensation award could be avoided by allowing the employer a set-off for such compensation should plaintiff prevail in the lawsuit. *Id.* The Court also pointed out that the burden, if any, of apportioning damages between the initial contracting of the disease and its subsequent aggravations was upon the defendant, since the problem of apportionment stemmed from the defendant's wrongful acts. *Id.* at 956, n. 11

Professor Larson has noted the significance of the *Contra Costa* decision and the "dual injury" concept which he finds has support in a variety of fact situations, including those involving second injuries in the form of impairment of legal rights. See cases cited, 2A A. Larson Workmen's Compensation Law § 68.32(b), (c) (1982). Professor Larson further notes that, while the burden of proof confronting plaintiffs who must establish deceit by concealment of a physical condition after it occurs is formidable, the legal validity of such a cause of action appears to be well on its way to gaining acceptance. *Id.* at 13–56; *See also, Austin v. Johns-Manville Sales Corp.,* 508 F.Supp. 313, 316–17 (D.Me. 1981); *Delamotte v. Unitcast Division of Midland Ross Corp.,* 64 Ohio App.2d 159, 411 N.E.2d 814 (1978).

Defendant Pennwalt points to the dissenting opinion in *Contra Costa* to advance the argument that to allow plaintiff to proceed in this action will deter employers from engaging in medical programs designed to minimize the risk and effects of occupational disease and will encourage employers to remain ignorant of their employees' medical problems to avoid potential lawsuits. Defendant states that "[i]t is probably better for the majority of workers for the courts to encourage medical programs rather than to punish those few employers to abuse the system." The cost to a worker and the potential gain to an employer which might result from the alleged conduct of defendant herein poses far too great a threat to the intent and purposes of the Workers Compensation Disability Act to warrant further response to defendant's argument. We do not believe the Legislature envisioned that immunity, by virtue of the exclusive remedy provision, would protect employers who could so flagrantly aggravate an employee's known physical condition while reaping the benefits of continued service and lower compensation payments, if any.

Where the allegations of plaintiff include concealment from the plaintiff of a known physical condition, and where no treatment or protections are afforded while medically recommended, and where plaintiff's condition is thus aggravated by such conduct, the exclusive remedy provision of the Workers' Compensation Disability Act will not bar this separate action in tort. Plaintiff herein has alleged and shown the existence of facts sufficient to raise genuine material issues for trial. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979).

For these reasons, defendant's motion will be DENIED. An appropriate Order will be entered.