Filed 8/20/14  Sinclair v. Praxair CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JEFF SINCLAIR et al., | D063578 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00089909-CU-FR-CTL) |
| PRAXAIR, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.


Ritter & Associates, Dwight Ritter and Karen Albence for Plaintiffs and Appellants.

Larson, Garrick & Lightfoot, Arnold D. Larson, Mary P. Lightfoot; Faegre Baker Daniels and Michael Kanute for Defendant and Respondent.

INTRODUCTION

Jeff Sinclair (Sinclair) and his wife (collectively Sinclairs) appeal from a summary judgment in favor of Sinclair's former employer, Praxair, Inc. (Praxair). They contend Praxair was not entitled to summary judgment because there are triable issues of material fact as to whether their tort claims fall within the fraudulent concealment exception to the workers' compensation exclusivity rule. We disagree and affirm the judgment.

BACKGROUND

Sinclair worked for Praxair's predecessor and Praxair collecting and testing soil, water, and air samples from potentially contaminated sites. During his employment, he underwent annual physical examinations.[1] In 1993 his physical examination report showed he had abnormal lab results and stated he should follow up with his own physician. It also stated, "[n]o renal exposures."[2]

In 1994, his examination showed he had high blood urea nitrogen and creatinine levels. As in 1993, the examiner noted on the results "[n]o renal exposures" and indicated Sinclair must follow up with his own doctor.

---

[1]    The record includes information for the examinations conducted in 1993, 1994, 1997, 1999, 2002, and 2009. It does not include information for the examinations conducted in the intervening years.

[2]    It is unclear from the record whether this statement meant he had no renal exposures or he should have no renal exposures.

In 1997, his examination results again showed he had high blood urea nitrogen and creatinine levels and the examiner noted he should follow up with his own physician. Laboratory results from his 1999 examination contained a similar notation.

In 2002, his examination results showed yet again he had abnormal blood levels and the examiner advised him to follow up with his own personal physician. The examiner also recommended he be precluded from having any exposure to nephrotoxic chemicals until his personal physician examined him.

Although Sinclair received copies of all of his annual examination results, he never reviewed them and, therefore, never complied with the recommendation to follow up with his personal physician. Nonetheless, his personal physician diagnosed him with renal disease in 1994 and he admittedly knew of the diagnosis at least since 1996. At the time, his physician attributed his renal disease to gout.

In 2009, after another annual examination, he was diagnosed with stage IV renal failure and became disabled from work. A worker's compensation qualified medical examiner determined 85 percent of the cause of his renal disease was from work-related chemical exposures.

The Sinclairs subsequently sued Praxair for intentional conduct violating public policy, intentional infliction of emotional distress, and loss of consortium.[3] Their complaint principally alleged Praxair intentionally concealed that workplace chemical exposures both caused and aggravated Sinclair's renal disease.

_____

[3]    Sinclair also filed a workers' compensation claim against Praxair, which has been resolved.

Praxair moved for summary judgment, arguing the Sinclairs could not establish their claims fell within the fraudulent concealment exception to the workers' compensation exclusivity doctrine because, among other reasons, Sinclair knew he had renal disease. The superior court agreed and granted summary judgment to Praxair.

DISCUSSION

I

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

II

"An employee injured during the course of employment is generally limited to remedies available under the Workers' Compensation Act. [Citations.] [Labor Code section] 3602, subdivision (b)(2) provides a narrow exception to this exclusivity rule and allows a civil suit '[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation . . . .' This provision was enacted in 1982 and

4

codifies the common law fraudulent concealment exception that was enunciated by our Supreme Court in *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465.

"Three conditions are necessary for the fraudulent concealment exception to apply: (1) the employer must have concealed 'the existence of the injury'; (2) the employer must have concealed the connection between the injury and the employment; and (3) the injury must have been aggravated following the concealment. [Citation.] If any one of these conditions is lacking, the exception does not apply and the employer is entitled to judgment in its favor." (*Jensen v. Amgen, Inc.* (2003) 105 Cal.App.4th 1322, 1325.)

Here, the undisputed evidence shows Sinclair was diagnosed with renal disease in 1994 and he knew of the diagnosis as early as 1996. Consequently, the Sinclairs cannot establish the first element of the fraudulent concealment exception, that Praxair concealed the existence of his injury from him.

The Sinclairs' complaint and arguments focus on the second and third elements of the fraudulent concealment exception, that Praxair concealed Sinclair's injury's employment connection and aggravation. However, even assuming the Sinclairs have raised triable issues of material fact on these points, this is not sufficient to sustain their burden on summary judgment because Praxair has conclusively negated the first element of the exception.

Moreover, the Sinclairs' reliance on *Foster v. Xerox Corp.* (1985) 40 Cal.3d 306 and *Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80 is misplaced. These cases are procedurally distinguishable as they deal with the requirements for adequately

5

pleading the fraudulent concealment exception.  (*Foster v. Xerox Corp.*, *supra*, at p. 309; *Palestini v. General Dynamics Corp.*, *supra*, at p. 83.)  They provide no guidance where, as here, the undisputed evidence shows the Sinclairs cannot establish one of the three elements of the exception.  (*Jensen v. Amgen, Inc.*, *supra*, 105 Cal.App.4th at p. 1327.)  Accordingly, we conclude the superior court properly granted summary judgment to Praxair.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


MCCONNELL, P. J.

WE CONCUR:


BENKE, J.


MCDONALD, J.