**Eugene R. KOHR and Elaine M. Kohr, his wife, et al.**

v.

**RAYBESTOS–MANHATTAN, INC.**

Civ. A. No. 78–3942.

United States District Court, E.D. Pennsylvania.

Feb. 28, 1985.

On Motion for Reconsideration March 9, 1985.

See also, D.C. 522 F.Supp. 1070.

James J. Pettit, Philadelphia, Pa., for plaintiffs.

Creed C. Black, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Defendant, Raymark Industries, Inc., employer or former employer of plaintiffs in the instant action has moved for summary judgment on what it perceives to be the remaining claim against it, that of intentional tort.[1] The motion, as originally filed, was essentially based on three arguments:

1. That there is no evidence of intentional tort;

2. That there is no cognizable intentional tort exception to the exclusivity provisions of the Workmen's Compensation/Occupational Disease Act under circumstances such as are alleged in the complaint in this case;

3. That the complaint does not sufficiently aver such intentional conduct as would abrogate the exclusivity provision even if the intentional tort exception is viable under these circumstances.

Before considering the merits of the motion, it is necessary that we engage in a short discussion of its proper procedural framework.

Although defendant requests summary judgment, its motion is unsupported by affidavit, by deposition testimony, or by any other type of evidence allowed by Fed.R. Civ.P. 56(c). Consequently, the motion is not accurately designated, for, "While a motion for summary judgment may be

---

1. Plaintiff argues that post-employment failure to warn and extra-worksite exposure of employees also remain as theories for recovery. The conflict will be resolved by our legal conclusions.

based solely on the pleadings, it is then functionally equivalent to a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c). If a motion is directed solely to the pleadings, the movant admits the truth of his adversary's well-pleaded allegations but denies their sufficiency as a matter of law. And in ruling on such a motion the pleadings are to be liberally construed". 6 Moore's Federal Practice ¶ 56.11[1]. Thus, in the absence of evidence to support a defendant's motion for summary judgment, the Court accepts the averments of the complaint as true and the moving party is deemed to have admitted the truth of those averments. Plaintiff, therefore, need not produce its evidence because on this motion defendants can prevail only if the complaint is legally deficient. Here, however, plaintiffs have produced evidence or, as defendant contends, at least an offer of proof. Under usual circumstances, that in itself may be enough to defeat an unsupported motion for summary judgment by raising an issue of material fact. But we are presented here with an unusual situation. As counsel recognized at argument, the issue presented is complex and has in only a limited number of cases been addressed in either the courts of Pennsylvania or this District. Consequently, we believe it would do all parties a disservice to dispose of the motion on technical grounds. Instead, we will follow the procedure outlined in Moore, *supra,* and treat the motion as one in which the defendant is testing the legal sufficiency of plaintiffs' complaint, both in terms of whether the allegations are indeed "well-pleaded" and, more importantly, in terms of whether the complaint states a claim

upon which relief may be granted in light of the exclusivity provisions of Pennsylvania's Workmen's Compensation Act.[2]

In addressing the question whether and under what circumstances an intentional tort cause of action exists as to an employee seeking to sue his employer for an asbestos-related injury otherwise compensable under Pennsylvania's Workmen's Compensation/Occupational Disease Act, we begin by reviewing the few cases available on this issue. We have considered Chief Judge Luongo's opinion in *Tysenn v. Johns-Manville Corp., et al.,* 517 F.Supp. 1290 (E.D.Pa.1981), Judge Bechtle's opinion in *Neal v. Carey-Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), and Judge Hannum's opinion in *Wilson v. Asten-Hill Manufacturing Co., et al.,* No. 79–332, slip op. (E.D.Pa. June 6, 1983). We have also examined the opinion of Judge Takiff, of the Philadelphia Court of Common Pleas, in the case of *Anastasi v. Pacor, Inc.,* 7 Phila. County Reports 488 (1982) and his more recent opinion in the case of *Getz v. Rohm & Haas, et al.,* No. 576 November Term, 1983, slip op. (Philadelphia Court of Common Pleas October 24, 1984). Although three of these cases held that the employee-plaintiffs were not entitled to pursue tort actions against their employers, those reaching the opposite result are not irreconcilable.[3] All agree on several general principles: the Workmen's Compensation Act was designed to be an exclusive remedy, supplanting tort recovery in employee injury cases; the Pennsylvania courts have recognized a limited exception to the general rule where the injury is the result of intentionally tortious conduct on the part of the employer and plaintiff bears a heavy burden in successfully bringing the allega-

---

**2.** Beyond the considerations of complexity of the issue presented here, the Court is justified in proceeding as on a motion to dismiss because although the fact that plaintiffs presented evidence while defendant did not was duly raised by plaintiffs' counsel, it was not pressed at argument. Understandably and properly, it was not pressed because plaintiff did not present evidence such as by affidavit of a factual witness. Rather, in argument, counsel made broad offers of proof based on voluminous materials produced in discovery in this and other cases. Thus,

counsel relied primarily on legal, not factual, arguments and our decision is accordingly based upon a legal conclusion.

**3.** In *Getz,* Judge Takiff concluded that a tort action was not automatically foreclosed but found that the allegations of the complaint did not sufficiently plead an intentional tort cause of action. Accordingly, plaintiffs were given leave to amend the complaint.

tions of the complaint within the "extremely narrow boundaries" of the exception. In fact, as noted in *Getz*, the results in the cases cited above in which plaintiffs were foreclosed from pursuing a common law tort action against their employers turned on the insufficiency of the complaints in alleging intentionally tortious conduct. Averments of willful, wanton or reckless conduct fail to state a cause of action under the intentional tort exception to the exclusivity provisions of the Compensation Act. Only allegations of actual and provable intent to injure the employee will suffice. Demonstrating that intent requires a showing that the employer desired to cause the injury or believed that the injury was substantially certain to result. *See, Neal* at 379. Thus, even allegations of such deliberate actions as the knowing violation of safety statutes will not state a cause of action under the strict pleading requirements imposed by the courts. *Evans v. Allentown Portland Cement Company*, 433 Pa. 595, 252 A.2d 646 (1969).

The judicially created intentional tort exception to the legislatively created exclusive remedy was developed in limited cases of discrete injury, such as assault upon an employee by his employer. *Readinger v. Gotschall*, 201 Pa.Super. 134, 191 A.2d 694 (1963). It is much more difficult to apply it to a "creeping disease" case. However, interpreting and analyzing *Schneider v. Rohm & Haas*, 23 D. & C.3d 428 (C.C.P.Phila.1982) and *Neal*, Judge Takiff recently articulated a standard for doing so. He reasoned that, given appropriate and sufficiently specific allegations, a "pattern of intentional, deliberate, egregious conduct by an employer which cannot be characterized as arising naturally in the course of employment" should bring a plaintiff within the admittedly narrow grounds of the exception. *Getz*, at 37. Judge Takiff's analysis appears to repre-

sent a reasonable and workable integration of the case law in the Pennsylvania courts and in this district, particularly if one applies his definition of the language and phrase "arising in the course of employment", as something which "occurs while the employee is doing the work which he is required to perform" (see *Anastasi, supra*, at page 498). Such a standard is more easily and rationally applied than one based on the nature of the injury, as defendant here urges, in that it focuses directly on the actions of the employer rather than on an attempt to distinguish between the initial injury and the aggravation thereof.[4] Moreover, it is a standard less likely to either swallow the exclusivity rule, a result clearly at odds with present Pennsylvania cases and federal cases in this district reflecting Pennsylvania law, or vitiate the exception. The employer's actions in exposing his employees to asbestos fibers is not such a deliberate act as would subject him to liability because it is conduct which arises naturally in the course of employment. On the other hand, consistent with *Neal*, a deliberate pattern of fraud and misrepresentation designed to induce plaintiffs to remain in the workplace despite the employer's actual knowledge of its hazardous nature is conduct which would subject him to liability under the intentional tort exception to the exclusivity provisions of the Workmen's Compensation/Occupational Disease Act.

Adopting this standard is the beginning of our analysis of the issue as presented in the instant case, not the end of it, for proper pleading is highly essential to presenting a viable cause of action in tort against an employer. In this regard, we digress momentarily to address plaintiffs' argument that even if we find no cause of action in tort, their claims of post-employment failure to warn and extra-worksite exposure, not addressed by defendant's mo-

---

**4.** In his discussion of *Johns-Manville Prods. Corp. v. Contra Costa Super. Ct.*, 612 P.2d 948, 27 Cal.3d 465, 165 Cal.Rptr. 858 (1980), Judge Takiff stressed the difficulties inherent in applying such a standard in light of Pa. case law which has consistently held that "injury" for occupational disease compensation purposes arises when a disability occurs, which in turn is defined as the point at which earning capacity is impaired. See, *Getz* at 35, and cases cited therein.

tion, would remain. Our investigation of the issue thus presented, whether or not an employee may pursue a remedy other than compensation against his employer, has revealed no exception to the exclusivity of the compensation scheme other than intentional tort. Therefore, all of plaintiffs' allegations against Raymark, however stated, must meet the intentional tort standards or recovery is foreclosed.

Before examining the allegations of the complaint to determine whether plaintiffs properly allege such a pattern of deliberate, egregious conduct as would bring these plaintiffs within the intentional tort exception and thus allow them to maintain their action against Raymark, there are a few general observations to be made. The case law is unanimous in emphasizing that averments of intentionally tortious conduct on the part of an employer must be clear and specific. Although we are to construe a complaint liberally on a motion akin to one for dismissal and, as plaintiffs argued, notice pleading is the general rule in federal court, we must balance these considerations against the stringent pleading requirements imposed upon plaintiffs seeking to maintain a common law tort action against their employers in the state courts. We do not frequently confront a situation where the more liberal pleading standards prevailing in the federal courts may have a deleterious effect upon a state mandated statutory scheme. In accepting a judicially created exception to a state legislative scheme we risk expanding it beyond its judicially intended bounds if we apply usual notice pleading standards. Importantly, however, a requirement of specific pleading is not unknown to the federal courts, particularly where substantial public policy concerns are implicated. It has long been the rule in the Third Circuit, for example, that civil rights complaints brought pursuant to 42 U.S.C. § 1983 must be pled with factual specificity. *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976).

The situation here presented is in many ways similar to that faced by the federal courts when presented with civil rights claims against municipalities under § 1983.

There, until the Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), local governments were not considered "persons" for § 1983 purposes and hence were effectively immune from suit for civil rights violations. Since *Monell*, a plaintiff who alleges an unconstitutional custom or policy on the part of a local government may maintain an action for violations of his civil rights accomplished by the execution of that policy or custom. In the present case there is a legislative determination that compensation is an exclusive remedy for employment related injuries, effectively and similarly immunizing employers from tort liability. However, Pennsylvania courts now recognize a narrow exception to that rule for deliberate, egregious conduct of an employer not arising out of employment or related thereto. This exception is similar to the custom or policy exception to the prior rule of municipal immunity.

■ As to the municipal immunity exception and based upon the important public policy of "weeding out" frivolous and insubstantial cases at an early stage of the litigation, this Circuit adopted, even prior to *Monell*, a requirement of fact pleading in civil rights cases. Thus, a complaint against a municipality under § 1983 must present allegations of municipal policy with sufficient factual specificity. *See, Borenstein v. City of Philadelphia & Briggs*, 595 F.Supp. 853 (E.D.Pa.1984). In *Getz*, Judge Takiff was concerned about the continued viability of the exclusivity rule in light of the intentional tort exception which he articulated. He adhered to strict pleading requirements consistent with the usual fact pleading standards in Pennsylvania courts. Recognizing the important public policy concerns underlying Judge Takiff's discussion of the pleading standards he outlined in *Getz*, we conclude that the situation here involved is even more compelling than the civil rights area for imposing specificity in pleading. Here we risk more than frivolous and insubstantial claims. There is in this situation the potential for creating a double

standard of recovery for plaintiffs in federal and state courts if we recognize the exception to the exclusivity provisions of Pennsylvania's Workmen's Compensation/Occupational Disease Act but fail to also adopt the Pennsylvania courts' pleading standards when an employee seeks to assert an intentional tort action against his employer. The principle underlying the Federal Rules of Civil Procedure is that the purpose of pleading is to facilitate a proper decision on the merits. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under these circumstances only a requirement of factual specificity inpleading will vindicate that principle and accomplish the results dictated by Pennsylvania law.

█ Turning now to the allegations of the complaint in this case, we consider first defendant's argument that only Count VI purports to state an intentional tort claim against Raymark. The averment there that defendant "deliberately, intentionally, willfully injured plaintiffs" is clearly insufficient under prior case law·in this district, *see, Tysenn* at 1293, *Wilson* at 3, *Neal* at 379, as well as under the specific pleading standards we deem necessary for this type of case. In the first instance, it does not indicate the conduct of the employer to which plaintiffs refer. Insofar as it may be a claim that the employer exposed the plaintiffs to asbestos fibers it does not state a claim under the intentional tort exception as we have here defined it no matter what pleading standards are imposed. Beyond that, it fails to aver clearly and with factual specificity a pattern of intentional, egregious conduct on the part of the employer which injured the plaintiffs.

Consistent with our obligations in construing a complaint on a motion to dismiss, however, we also examined the allegations of Count VII which apparently seeks to state claims for failure to warn, fraud and misrepresentation. The difficulties with Count VII are twofold: first, the allega-

tions are not directed specifically to the conduct of employer but encompass the actions of all defendants; second, they are equivocal as to Raymark's actual knowledge of the dangers inherent in using asbestos products. In addition, we note that all the cases in which employee-plaintiffs were allowed to pursue tort actions against their employers involved situations where the employers themselves had hired experts to examine their own employees, or to examine the employees' work-related illness records, etc., but then chose to ignore the experts' conclusions and/or misrepresent such conclusions to the employees. *See, Neal, Schneider* and *Getz.* Such does not appear to be the case here. Even if we were to supplement the complaint by incorporating and considering the evidence plaintiffs supplied to the Court to support their opposition to the instant motion, we find only broad claims against all defendants for concealing information known generally in the industry, not claims specifically directed against Raymark for its conduct vis-à-vis its employees only. None of the allegations of this complaint, therefore, meet the strict, factually specific pleading requirements necessary to bring plaintiffs in this case within the narrow bounds of the intentional tort exception to the exclusivity provisions of the Workmen's Compensation/Occupational Disease Act.

In hereafter entering an order dismissing employee-plaintiffs' claims against Raymark, their employer, which will be designated judgment for the defendant in the context of this motion, we are cognizant of the usual practice followed in these circumstances of giving plaintiffs the opportunity to amend their complaint. We do not deem that to be a viable alternative in this case at this time. It is now the eve of trial. Allowing an amendment to the complaint would certainly delay the trial of a seven-year-old case by twenty-one plaintiffs against ten defendants other than Raymark. As noted above, our careful examination of plaintiffs' offer of proof per-

suades us that an amendment would likely be futile in any event.[5]

In summary, we recognize that a narrow intentional tort exception to the exclusivity provisions of Pennsylvania's workers' compensation scheme does exist through which an employee-plaintiff may assert a common law claim against an employer for an asbestos-related disease where he can show a pattern of deliberately egregious conduct not arising out of employment or related thereto. Liability on the part of an employer may not be based upon its conduct in exposing and continuing to expose its employees to asbestos, however, because such exposure arises out of employment and is subject to the exclusivity principles discussed. *Other* conduct of the employer which may support a cause of action must be alleged with factual specificity and must demonstrate that the employer took some action specifically directed against its own employees.

## ON MOTION FOR RECONSIDERATION

On February 28, 1985, this Court, on motion of defendant, Raymark Industries, Inc., for summary judgment, treated by the Court as a motion for judgment on the pleadings, entered judgment in favor of defendant. We held that the complaint failed to allege, with sufficient specificity, the alleged intentionally tortious conduct of the defendant as required by Pennsylvania law and to sufficiently and adequately plead a common law intentional tort claim against said defendant. We considered the exclusivity provisions of the Pennsylvania Workmen's Compensation and Occupational Disease Acts. In so doing, and on plain-

tiff's urging, we considered and ultimately adopted the reasoning and principles enunciated and offered by the Court in the case of *Getz v. Rohm & Haas Company, et al.,* No. 576 November Term, 1983 (Phila. Court of Common Pleas, October 24, 1984).

In our prior memorandum we said:

In fact, as noted in *Getz,* the results in the cases cited above in which plaintiffs were foreclosed from pursuing a common law tort action against their employers turned on the insufficiency of the complaints in alleging intentionally tortious conduct. Averments of willful, wanton or reckless conduct fail to state a cause of action under the intentional tort exception to the exclusivity provisions of the Compensation Act. Only allegations of actual and provable intent to injure the employee will suffice. · Demonstrating the intent requires a showing that the employer desired to cause the injury or believed that the injury was substantially certain to result. *See, Neal* at 379. Thus, even allegations of such deliberate actions as the knowing violation of safety statutes will not state a cause of action under the strict pleading requirements imposed by the courts. *Evans v. Allentown Portland Cement Company,* 433 Pa. 595, 252 A.2d 646 (1969).

The judicially created intentional tort exception to the legislatively created exclusive remedy was developed in limited cases of discrete injury, such as assault upon an employee by his employer. *Readinger v. Gotschall,* 201 Pa.Super. 134, 191, A.2d 694 (1963). It is much more difficult to apply it to a 'creeping disease' case. However, interpreting

---

**5.** At oral argument, plaintiffs' counsel, who also represents the plaintiffs in *Getz,* informed the Court that the complaint in that case was found to state a claim as amended. However, as noted, that case involved allegations that the defendant "maintained a medical department to

diagnose, treat and examine plaintiff". Similarly, *Schneider* and *Neal* involved experts, hired by the employers, to determine the cause of their employees' illnesses. No such facts and circumstances have been here asserted in oral argument or otherwise.

and analyzing *Schneider v. Rohm & Haas*, 23 D. & C.3d 428 (C.C.P.Phila. 1982) and *Neal*, Judge Takiff recently articulated a standard for doing so. He reasoned that, given appropriate and sufficiently specific allegations, a 'pattern of intentional, deliberate, egregious conduct by an employer which cannot be characterized as arising naturally in the course of employment' should bring a plaintiff within the admittedly narrow grounds of the exception. *Getz*, at 37. Judge Takiff's analysis appears to represent a reasonable and workable integration of the case law in the Pennsylvania courts and in this district, particularly if one applies his definition of the language and phrase 'arising in the course of employment', as something which 'occurs while the employee is doing the work which he is required to perform' (*see Anastasi, supra*, at page 498). Such a standard is more easily and rationally applied than one based on the nature of the injury, as defendant here urges, in that it focuses directly on the actions of the employer rather than on an attempt to distinguish between the initial injury and the aggravation thereof.[4] Moreover, it is a standard less likely to either swallow the exclusivity rule, a result clearly at odds with present Pennsylvania cases and federal cases in this district reflecting Pennsylvania law, or vitiate the exception. The employer's actions in exposing his employees to asbestos fibers is not such a deliberate act as would subject him to liability because it is conduct which arises naturally in the course of employment. On the other hand, consistent with *Neal*, a deliberate pattern of fraud and misrepresentation designed to induce plaintiffs to remain in the workplace despite the employer's actual knowledge of its hazardous nature is conduct which would subject him to liability under the intentional tort exception to the exclusivity provisions of the Workmen's Compensation/Occupation Disease Act.

[4] In his discussion of *Johns-Manville Prods. Corp. v. Contra Costa*, Super.Ct., 612 P.2d 948, 27 Cal.3d 465, 165 Cal.Rptr. 858 (1980) Judge

Takiff stressed the difficulties inherent in applying such a standard in light of Pa. case law which has consistently held that 'injury' for occupational disease compensation purposes arises when a disability occurs, which in turn is defined as the point at which earning capacity is impaired. See, *Getz* at 35, and cases cited therein.

However, in following *Getz*, we declined to dilute Judge Takiff's careful preservation of Pennsylvania's legislative scheme by engrafting the liberal federal notice pleading standards onto what is essentially a state cause of action. Instead, analogizing the situation we faced to that confronting the Third Circuit when it adopted a specific pleading standard for 42 U.S.C. § 1983 civil rights cases, we found the rationale supporting the Circuit's action to apply with even more compelling force in the context of this case because here we are charged with the preservation and application of a statutorily mandated compensation program affecting all Pennsylvania employees, a compelling issue not involved under 42 U.S.C. § 1983. Consequently, applying *Getz*, we found the allegations of the complaint originally filed insufficient to state a cognizable claim under the narrow intentional tort exception to the Compensation Act. Accordingly, at pages 9 and 10 of our prior memorandum we stated:

In *Getz*, Judge Takiff was concerned about the continued viability of the exclusivity rule in light of the intentional tort exception which he articulated. He adhered to strict pleading requirements consistent with the usual fact pleading standards in Pennsylvania courts. Recognizing the important public policy concerns underlying Judge Takiff's discussion of the pleading standards he outlined in *Getz*, we conclude that the situation here involved is even more compelling than the civil rights area for imposing specificity in pleading. Here we risk more than frivolous and insubstantial claims. There is in this situation the potential for creating a double standard of recovery for plaintiffs in federal and state courts if we recognize the exception to the exclusivity provisions of Pennsylvania's Workmen's Compensation/Oc-

cupational Disease Act but fail to also adopt the Pennsylvania courts' pleading standards when an employee seeks to assert an intentional tort action against his employer. The principle underlying the Federal Rules of Civil Procedure is that the purpose of pleading is to facilitate a proper decision on the merits. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under these circumstances only a requirement of factual specificity in pleading will vindicate that principle and accomplish the results dictated by Pennsylvania law.

Plaintiffs have now moved for reconsideration of our order and to amend the complaint. Just as we previously considered the allegations in plaintiffs' original complaint and the sufficiency thereof (see pages 10 and 11 of our prior memorandum), so we here consider the sufficiency of the proposed amendments to the complaint in light of the *Getz* case cited and relied upon by the plaintiffs and other cases cited in our prior memorandum to determine whether the motion to amend should be granted. In considering the proposed amendments we need not, should not and indeed are not influenced by this belated application filed on the eve of trial,[1] after the case has been in litigation for approximately seven years. We recognize the delays incident to bankruptcies, resulting stay orders, appeals and like matters. The problems of counsel in managing deadlines fixed by multiple courts and negotiating reasonable settlements should be recognized and understood, thus, explaining the extraordinary and sometimes unreasonable burdens placed upon counsel and the Court.

In proposed Count VIII, plaintiffs allege that Raymark intentionally injured them by intentionally engaging in a systematic pattern of egregious misconduct; by intentionally suppressing their scientific and medical knowledge regarding the risks of asbestos exposure; by affirma-

tively and intentionally distorting scientific and medical information engendered by scientists and physicians over whom they retained control; by retaining both staff physicians whom they controlled and by retaining physicians outside the plant whom they controlled, and by intentionally entering into a pattern of fraud, misrepresentation and concealment regarding the medical findings of plaintiffs and/or plaintiffs' decedents so that plaintiffs and/or plaintiffs' decedents innocently relied to their detriment on said fraud, misrepresentation and concealment; by intentionally and affirmatively concealing the results of dust studies and governmental studies; by intentionally deciding not to warn plaintiffs and/or plaintiffs' decedents of the risks of asbestos exposure and/or of precautions to be taken; by intentionally providing inadequate, untimely, misleading and ambiguous warnings; by intentionally deciding to refuse to fund or perform adequate testing of asbestos; by intentionally entering into a conspiracy with other defendants to perform all of the above misconduct; by intentionally exposing plaintiffs and/or plaintiffs' decedents to the hazards of asbestos exposure in a calculated, deliberate, egregious, economically motivated decision to pursue profit at the expense of the health and life of plaintiffs and/or plaintiffs' decedents; each and every one of which caused the injuries set forth herein.

■ We conclude that these allegations lack the requisite factual specificity required to state a common law claim against an employer. Under the pleading requirements enunciated in *Getz* which we previously held were necessary to bring same within the narrow bounds of the intentional tort exception to the Workmen's Compensation Act scheme, plaintiffs are required to set forth with *factual specificity* the

---

1. The motion was filed with this Court on Friday, March 8, 1985, at 11:00 A.M. The case is scheduled for trial for the second time next Monday, March 11, 1985, at 10:00 A.M. Similarly, belated motions were filed by the defend- ant when the case was originally fixed for trial a week ago and again when approximately a week prior, the case was fixed for final pre-trial conference.

acts of the employer alleged to comprise the "pattern of intentional, egregious misconduct" which was allegedly directed against each plaintiff. As suggested in *Getz*, "magical words" do not suffice and do not meet plaintiffs' burden. We realize that it is a heavy but necessary burden. However, having adopted the intentional tort exception as defined by Judge Takiff, and as urged by plaintiffs in their motion and at oral argument, this Court is obliged to compare the language and allegations of the complaint found insufficient in *Getz* with the language and allegations now proposed by plaintiffs by way of amendment to the complaint. Judge Takiff found the following averments insufficient to state a claim:

> The defendant with full knowledge of the consequences of asbestos use and exposure did by design, resolve, determination and thereby with intent to injure directly concealed information of such life threatening use and/or exposure from plaintiff, thereby intentionally and willfully concealing from the plaintiff the nature and extent of such danger to his health, so as to specifically commit an intentional tort. Complaint, Count V, para. 31.

Further, plaintiff averred that his employer:

> through its agents, servants, and/or employees, with deliberate intent to induce plaintiff to continue to work under hazardous conditions did conspire to and did fraudulently conceal from plaintiffs knowledge of diseases known by these defendants to be caused by ingestion of asbestos fibers and dust and therefore defendant, Rohm and Haas Company did deliberately intend the wrong resulting in the illnesses of the plaintiff. Complaint, Count V, para. 33.

*Getz*, at 4, 5.

Obviously, the foregoing allegations, rejected in *Getz* as insufficient, are even more specific than Count VIII now proposed by plaintiffs. We recognize that Judge Takiff was applying Pennsylvania's procedural rules requiring specific pleading. We have held that under the circumstances, those rules perform the necessary substantive function of assuring that the "narrow bounds" of the intentional tort exception are not inadvertently widened by applying the federal rules of notice pleading. (See prior memorandum and order dated February 28, 1985). Hence, our adoption and application of specificity in pleading this type of claim. We shall not repeat what we have previously stated, in detail, as the basis for our conclusion. The plaintiffs would have us adopt *Getz* for the purpose of demonstrating that the "intentional tort" doctrine is alive and well in Pennsylvania but risk burying the exclusivity provisions of the Pennsylvania Compensation Law by the application of federal *notice* pleading as opposed to state *factual* pleading.

Plaintiffs also include a proposed Count IX, dealing with ambient air quality in the area around the Raymark plant and defendant's post-employment failure to warn plaintiffs of the hazards of asbestos exposure and factors found to aggravate asbestos-related diseases. Plaintiffs continue to argue that these allegations do not need to come within the bounds of the intentional tort standard. We reiterate our holding that workmen's compensation has been legislatively designed as the exclusive remedy for employees injured by the acts of their employers arising out of employment or *related thereto*. Allegations that do not meet the stringent pleading standards of the narrowly defined intentional tort exception to the exclusivity of remedy provisions of Pennsylvania's compensation scheme will not suffice to sustain a common law intentional tort action by an employee against his employer. Because we conclude that the allegations in proposed Count IX do not meet the required pleading standards, they likewise fail to state a claim upon which relief may be granted.[2]

---

**2.** We also note, in this regard, that another of the cases upon which plaintiffs originally urged us to rely, *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), dealt with the

In summary, having reconsidered and re-affirmed our opinion and order of February 28, 1985, and having further carefully examined and considered plaintiffs' proposed amendments to the complaint, we conclude that if said amendments were permitted they would fail to state a cognizable claim against defendant Raymark. Hence, plaintiffs' motion for leave to file an amended complaint in the form submitted will be denied.

We now address plaintiffs' motion for reconsideration of our prior order contending that we improperly treated it as a Rule 56 motion, disregarding defendant's lack of supporting evidence but *passing* upon the sufficiency of plaintiffs' proferred evidence. In fact, we treated Raymark's motion as one brought pursuant to Rule 12(c) and so stated. Our decision was based upon the insufficiency of the complaint. Plaintiffs argue further that if such is the case, the motion should have been denied because the allegations of the complaint must be taken as true and correct.

Plaintiffs fail to realize, however, that *truth* does not equal *sufficiency*. The granting of a Rule 12(c) motion means that even if all the averments of the complaint are true, they still fail to state a cognizable claim. We so found. Hence, plaintiffs' motion for reconsideration will be denied.

issues of post-employment failure to warn on the part of the employer. There Judge Bechtle found that the claim fell within the intentional tort exception. It is impossible to determine from that opinion whether or not the sufficiency of the complaint was ever challenged. A review of the opinion in that case, however, indicates that said issue was not precisely raised and thus specifically decided by the *Neal* court.