Raymond KOSLOP, Plaintiff,

v.

CABOT CORPORATION, Defendant.

John HLUDZIK, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Charles TRUSKY, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Robert P. DUNSTAN, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Raymond PETRUNCIO, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Alfred F. MATUSICK, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Civ. A. Nos. 85–0936 to 85–0940 and 85–1267.

United States District Court, M.D. Pennsylvania.

April 10, 1986.

ingly, the measure of compensatory damages will be the same for both actions.

Anthony J. Miernicki, Nicholas M. Panko, Anthony J. Miernicki, P.C., Shenandoah, Pa., Jerry S. Cohen, Michael D. Hausfeld, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., Richard J. Lippes, Allen, Lippes & Shonn, Buffalo, N.Y., for plaintiffs.

Thomas E. Wood, Harrisburg, Pa., and Tyson W. Coughlin, Ballard, Spahr, Andrews & Ingersoll, A. James Johnston, Post & Schell, Philadelphia, Pa., for defendant; William S. Richardson, Cabot Corp., Reading, Pa., of counsel.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Defendant, Cabot Corporation, has filed a motion to dismiss plaintiffs' second amended complaints in accordance with Fed.R.Civ.P. 12(b)(6). By our order and memorandum of November 18, 1985, *Koslop v. Cabot Corp.*, 622 F.Supp. 222 (M.D. Pa.1985), we granted plaintiffs leave to amend their complaints to allege additional facts in support of their claim under the intentional tort exception to the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 *et seq.* (Purdon's Supp.1985).[1] The issue presented by defendant's motion to dismiss is whether the amended complaints state a cognizable claim under the intentional tort exception. For the reasons which follow, we will deny defendant's motion to dismiss.

### II. *Background.*

Plaintiffs have been diagnosed as suffering from berylliosis, a condition which they allege is the result of unreasonable exposures to beryllium during the course of their employment for defendant's predecessor, Kawecki-Berylco Industries ("KBI") at its Hazleton plant. Plaintiffs' allegations can be broken down into two major claims. First, plaintiffs maintain that KBI discovered through certain x-ray results that there was an occupational risk of contracting beryllium related diseases and that KBI suppressed this information knowing that serious injuries to plaintiffs were substantially certain to occur in the future. In this regard, plaintiffs allege that KBI hired a medical specialist to conduct chest x-rays

---

1. On December 16, 1985 plaintiffs filed identical complaints.

on the employees at the Hazleton plant every six months. These x-rays revealed that approximately twenty (20) percent of the Hazleton employees were suffering from some form of beryllium illness. Despite this knowledge, defendant is charged with intentionally withholding this information from its employees. Plaintiffs further allege that requests for the results made by some plaintiffs were met with either denials or misinformation.

Second, plaintiffs assert that defendant intended to injure them by ignoring the recommendation of a health and safety consultant that the employees at the Hazleton plant be placed under a program of medical surveillance. More specifically, they claim that Dr. Richard Chamberlain of the Massachusetts Institute of Technology was hired by KBI in 1972 to monitor conditions at the Hazleton plant and to make health and safety recommendations. After additional x-rays and blood testing was performed by a medical team from the Massachusetts General Hospital, beryllium related diseases were discovered. These conditions had existed for a number of years and were obvious in the x-rays referred to in the preceding paragraph. A surveillance program was then instituted which consisted of extensive medical testing once every three years. This program commenced in 1972 and lasted until 1980 when the Hazleton plant was closed. Plaintiffs, however, were not informed about the necessity of continuing such a program in the future.

## III. *Discussion.*

When ruling on a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b), we must accept all allegations in the complaint as true, and must construe the complaint liberally in the light most favorable to the plaintiffs. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572, 575 n. 3 (1980); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir. 1977). With these principles in mind we will address the issues raised by defendant.

As we noted in our previous memorandum, an employee may recover from his employer under Pennsylvania law for an intentional tort if that employer deliberately injures the employee. *Koslop, supra* at 224–25. In order to state a cause of action under the intentional tort exception plaintiffs' allegations must be made "with factual specificity and must demonstrate that the employer took some action specifically directed against its own employees." *Kohr v. Raybestos-Manhattan, Inc.*, 626 F.Supp. 20 (E.D.Pa.1985). Plaintiffs must assert more than an employer's awareness of dangerous conditions at the worksite. *Shelly v. Johns-Mansville Corp.*, No. 82–2730 (E.D.Pa. Oct. 28, 1985). "Only allegations of actual and provable intent to injure the employee will suffice. Demonstrating that intent requires a showing that the employer desired to cause the injury or believed that the injury was substantially certain to result." *Kohr*, At 26.

### A. *Withholding of X-ray Results.*[2]

Citing *Tichy v. Asten Hill Manufacturing Co.*, No. 2364 (C.P.Phila.County June 27, 1985) defendant asserts that plaintiffs' claim that KBI purposely withheld the results of chest x-rays to the detriment of plaintiffs are insufficient to come within the intentional tort exception. In *Tichy*, the plaintiff alleged, *inter alia*, that defendant distorted or misdiagnosed the results of medical examinations conducted upon workers such as plaintiff. Finding that these allegations were inadequate, the court stated:

> this allegation does not fall into the narrowly defined exception created by precedent since plaintiff does not allege that the results of medical examinations *actually conducted on her deceased husband* were intentionally distorted or misdiagnosed by her husband's employer— and its medical staff under its direction— in order to conceal the existence of an asbestos-related injury *incurred at the*

---

**2.** Contrary to defendant's contention, these allegations are not in violation of our prior order which granted plaintiffs leave to file amended complaints setting forth facts pertaining to their claim that defendant intended to injure them.

*specific plant* where plaintiff was employed.

*Id.* at 34 n. 25.

Based upon this language, defendant maintains that plaintiffs' complaints do not state a claim because plaintiffs have not alleged that KBI knew that the named plaintiffs had in fact contracted a beryllium related illness and intentionally failed to inform plaintiffs. *Tichy*, however, is distinguishable from the instant case because the plaintiff in *Tichy* did not allege a pattern of wrongful conduct on the part of the employer. In this regard the court noted that "the allegations lack the specific reference to a pattern of egregious conduct by an employer which have been deemed by courts as falling within the intentional tort exception...." *Id.* at 33. Unlike the plaintiff in *Tichy*, plaintiffs here have asserted more than a claim that medical tests were distorted. They allege that defendant has engaged in a series of actions designed to prevent the dissemination of important information pertaining to employee safety and welfare.

Allegations substantially identical to these were held to state a cause of action in *Schneider v. Rohm & Haas Co.*, 23 D & C3d 428 (1982). In *Schneider*, plaintiff alleged that defendant suppressed information concerning the use of dangerous chemicals at the workplace. Defendant moved to dismiss the complaint for failure to state a cause of action under the intentional tort exception. The court denied defendant's motion stating:

> In the complaint, plaintiff alleges that in the early 1960's Rohm and Haas management, the John Doe defendants, became aware that employees working in or around certain buildings were contracting cancer at a young age and dying shortly thereafter. Defendants commissioned studies and retained experts to ascertain the cause of the problem, and learned that employee exposures to certain chemicals were dangerous. Nevertheless, defendants continued to allow employees to work around the chemicals with no precautions.
>
> Plaintiff also alleges that defendants deliberate failure to warn employees of the danger constituted an active conspiracy in suppressing dissemination of meaningful information about the nature of the chemicals at the plant. In sum, the complaint adequately pleads that defendant, Rohm and Haas, through its management, the John Doe defendants, intentionally engaged in a systematic pattern of misconduct. Such misconduct states causes of action in intentional tort which are cognizable in this court.

*Id.* at 432.

**B. Termination of Post-employment Surveillance Program.**

■ Using this same argument, defendant also claims that plaintiffs' allegations concerning a lack of post-employment surveillance are insufficient to state a cognizable claim under the intentional tort exception. Again, defendant argues that plaintiffs must allege that KBI knew that these plaintiffs had contracted a beryllium related disease and failed to act. This time, however, defendants rely upon *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *aff'd sub nom. Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir.1985) and *Shelly v. Johns-Manville Corp.*, supra.

In *Neal*, the leading case on this issue, plaintiffs brought an action against their former employer's successor for asbestos related injuries arising out of their employment. The employer retained a medical consultant to study the problems of asbestos exposure and to propose an occupational health program. After studying the death certificates of former employees, the doctor informed defendant that there was an occupational risk of cancer. He also advised defendant that it should inform employees of the risks of asbestos exposure and establish a medical surveillance program. These recommendations were ignored and the doctor was terminated. The court found that this evidence was sufficient for a jury to find that defendant deliberately intended to injure plaintiffs.

Defendant argues that the key to *Neal* is the fact that the defendant knew that cer-

tain employees were suffering from an asbestosis illness and took no action with respect to those employees. We disagree. Contrary to defendant's contention, the physician in *Neal* never diagnosed certain employees as having contracted an asbestos related condition. Instead, he determined only that there was an occupational risk of cancer. It was the defendant's failure to warn its employees of this risk and to take preventive measures which was unlawful. In the instant case, plaintiffs' allegations, that defendant ignored the safety recommendations of Dr. Chamberlain, closely parallel those in *Neal* and thus appear to state a claim under the exception.

Defendant argues that a different result is required by *Shelly, supra.* In *Shelly* plaintiffs claimed that defendant, with knowledge of the dangers associated with asbestos, failed to inform its employees of these dangers. The court held these allegations were insufficient to fall within the exception. In reaching this decision the court stated that:

> "An intentional tort occurs only if the employer withholds from an employee information about that individual's particular medical condition, knowing that withholding such information will cause severe harm to the employee."

Based on this excerpt, defendant argues that plaintiffs must allege that KBI was aware that plaintiffs had berylliosis. We decline to follow this approach because such an interpretation is inconsistent with *Neal* and must be rejected as we believe that *Neal* is the more persuasive authority.

In sum, we find that in accordance with the decisions in *Schneider* and *Neal*, plaintiffs have stated a claim under the intentional tort exception. Plaintiffs' complaints, especially when viewed as a whole, "state sufficient facts establishing defendant'[s] systematic pattern of intentional misconduct." *Schneider, supra* at 432. Accordingly, defendant's motion to dismiss is denied.

An appropriate order will be entered.