Raymond KOSLOP, Plaintiff,

v.

CABOT CORPORATION, Defendant.

John HLUDZIK, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Charles TRUSKY, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Robert P. DUNSTAN, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Raymond PETRUNCIO, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Alfred F. MATUSICK, Plaintiff,

v.

CABOT CORPORATION, Defendant.

Civ. A. Nos. 85–0936 to 85–0940 and 85–1267.

United States District Court, M.D. Pennsylvania.

March 6, 1987.

---

Anthony J. Miernicki, Nicholas M. Panko, Shenandoah, Pa., Jerry S. Cohen, Michael D. Hausfeld, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., Richard J. Lippes, Buffalo, N.Y., for plaintiffs.

Thomas E. Wood, Harrisburg, Pa., Tyson W. Coughlin, Ballard, Spahr, Andrews & Ingersoll, A. James Johnston, Philadelphia, Pa., for defendant; William S. Richardson, Cabot Corp., Reading, Pa., of counsel.

## MEMORANDUM

CALDWELL, District Judge.

### Introduction

█ Presently pending are the cross-motions of plaintiffs and defendant for summary judgment pursuant to Fed.R.Civ.P. 56. These motions require us, once again, to interpret and apply the intentional tort exception to the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 *et seq.* and the Occupational Disease Act, 77 P.S. § 1201 *et seq.* Under this exception, a plaintiff must show that his employer desired to cause the injury or believed that the injury was substantially certain to result. Asserting that conduct virtually identical to that of defendant in the instant action was held to constitute an intentional tort within the meaning of the exception in *Neal v. Carey Canadian Mines Ltd.,* 548 F.Supp. 357 (E.D.Pa.1982), *aff'd sub nom. Van Buskirk v. Carey Canadian Mines Ltd.,* 760 F.2d 481 (3d Cir.1985), plaintiffs contend that summary judgment should be entered in their favor on the issue of liability. Defendant argues to the contrary (1) that in light of the recent decision of the Third Circuit in *Wilson v. Asten-Hill Mfg. Co.,* 791 F.2d 30 (3d Cir.1986), plaintiffs' complaints must be dismissed for failure to state a claim, and (2), that in any event the evidence adduced by plaintiffs does not demonstrate that defendant intended to injure the plaintiffs. For the reasons which follow we will grant defendant's motion for summary judgment while denying plaintiffs' motions.

### Background

The following facts are not in dispute. Defendant, Cabot Corporation, and its predecessors in interest, The Beryllium Corporation and Kawecki-Berylco Industries, Inc., operated a plant located near Hazleton, Pennsylvania, which produced beryllium metal from 1957 until 1981. Plaintiffs are former employees of defendant and its predecessors who allegedly contracted berylliosis as a result of having been exposed to beryllium dust and fumes during the course of their employment.[1] The inhalation of beryllium dust and fumes can cause chronic beryllium disease, an ir-

---

1. Defendant contests plaintiffs' assertions that     they have contracted berylliosis.

reversible lung problem which may not manifest itself until many years after exposure. It may also cause an acute form of beryllium poisoning which can be cured over a short period of time with proper treatment.

Because of the known dangers associated with beryllium, an industrial hygiene program was maintained at the Hazleton plant. Under the program, upon arrival at the plant each day, every employee was required to change into freshly laundered work clothes. At the end of each shift the employees were made to shower before changing into street clothing. The program also included a respirator program, ventilation equipment at sources of exposure and routine sampling of beryllium levels in the plant. In addition, a medical program was established for the employees consisting of a pre-employment chest x-ray, an annual chest x-ray during the course of employment and a final chest x-ray upon termination of employment. The x-rays were taken by independent consultants including the Commonwealth of Pennsylvania and Massachusetts General Hospital. From 1960 through 1974, any abnormalities discovered in the x-rays were reported either to the employee or his physician. From 1974 to 1980, Massachusetts General Hospital reported the results of its medical examinations to each employee directly, regardless of whether any abnormalities were found. Throughout their employment, plaintiffs tested negative for beryllium-related diseases.

In May, 1979, Kawecki-Berylco Industries, Inc. announced that it was discontinuing its beryllium operations at the Hazleton plant. At that time, Richard Chamberlin, an industrial hygienist with extensive beryllium experience, advised both defendant and the employee's union (the Oil, Chemical and Atomic Workers' Union Local No. 8–837) that the medical program should be continued to monitor the employees' health after the plant was closed. The continuation of the medical program was considered by Mr. Chamberlin to be critical. Relying on this recommendation, the union attempted to have a continuing surveillance pro-

gram incorporated in the final collective bargaining agreement. The defendant, however, refused the union's proposal and the following provision for medical benefits was provided in the 1980 agreement:

> The parties in connection with the discontinuance of the beryllium portion of the Company's business at the Hazleton, Pennsylvania Plant have agreed that a physical examination, as previously established by the Massachusetts General Hospital Pulmonary Unit, will be provided for active employees on the payroll as of 5/30/80 and, on a voluntary basis, to all people who were on the payroll as of 5/26/79 and whose jobs were discontinued due to the phase-out of the beryllium manufacturing operations. During the term of this agreement, the physical examination will consist of a chest X-ray and a pulmonary function test performed by the Company, completion of a questionnaire supplied by Massachusetts General Hospital and an evaluation of data by Massachusetts General Hospital. The Company will reimburse reasonable diagnostic costs including medical, surgical, hospitalization, transportation, maintenance expenses and lost time with respect to employees suspected of having beryllium disease as a result of this physical examination.

*Discussion*

*Failure to state a claim under the intentional tort exception*

Defendant initially argues that we should reconsider our prior decision in *Koslop v. Cabot Corp.*, 631 F.Supp. 1494 (M.D. Pa.1986) in which we denied defendant's motion to dismiss plaintiffs' amended complaints for failure to state a claim under the intentional tort exception. Asserting that our decision is inconsistent with the recent decision of the Third Circuit in *Wilson v. Asten-Hill Mfg. Co.*, 791 F.2d 30 (3d Cir.1986), defendant argues that plaintiffs' second amended complaints fail to set forth a claim within the intentional tort exception because the complaints do not allege that it

was the purpose of defendant to injure plaintiffs. Plaintiffs, of course, contend that the *Wilson* decision does not affect the validity of our prior decision.

In *Wilson*, four employees and their spouses brought suit against the former employer, alleging that they contracted asbestosis as a result of being exposed to asbestos fibers during their employment. Plaintiffs there further alleged that the defendant employer possessed medical and scientific data that clearly indicated that the inhalation of asbestos was unreasonably dangerous and carcinogenic, intentionally withheld scientific data and disseminated outdated scientific data, failed to provide warnings of the risks and failed to test products adequately. Defendant moved to dismiss the complaint, taking the position that plaintiffs' action was barred by the Pennsylvania Workmen's Compensation and Occupational Disease Acts. The district court granted defendant's motion and plaintiffs appealed. The Court of Appeals affirmed and held that plaintiffs' allegations, which did not allege that it was the purpose of defendant to injure them, did not fall within the intentional tort exception.

Whether or not plaintiffs' allegations in the present case state a claim under the intentional tort exception is a difficult question. Unlike the plaintiffs in *Wilson*, plaintiffs have alleged more than the failure of their employer to protect them against the known risks involving beryllium. Here, plaintiffs assert that defendant withheld and misrepresented the results of yearly x-ray testing and intentionally ignored the recommendation of Mr. Chamberlain that a life time medical program be maintained for its former employees. Plaintiffs contend that these allegations establish the requisite intent to injure which was absent in *Wilson*. We, however, need not resolve this troublesome issue because we find that defendant is entitled to entry of summary judgment in its favor for the reasons stated below.

*Summary Judgment Motion*

We must evaluate the motions for summary judgment under the following, well established standard:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant.

*Hersh v. Allen Products Company, Inc.*, 789 F.2d 230, 232 (3d Cir.1986).

Defendant argues that summary judgment should be granted in its favor because plaintiffs have not produced evidence which supports their allegations of an intentional tort. In this regard, defendant claims that there is no evidence that it withheld or misrepresented x-ray results indicating the existence of beryllium related diseases or suppressed knowledge of the occupational risks associated with beryllium.[2] While not conceding these points, plaintiffs rely primarily on their contention that defendant's rejection of Mr. Chamberlain's recommendation, for the establishment of a lifetime medical surveillance program, constitutes an intentional tort under Pennsylvania law. In support they cite *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Pa.1982), *aff'd sub. nom. Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir.1985). Defendant admits that it did not provide a lifetime

---

**2.** Defendant admits that prior to 1974, plaintiffs, who tested negative for beryllium related diseases did not receive the results of their yearly chest x-rays. Defendant asserts that its withholding of x-rays from plaintiffs is inconsequential since such results would not have revealed any abnormalities. Plaintiffs argue that defendant's conduct nevertheless is evidence of an intention to injure. This argument is unpersuasive and does not merit discussion.

medical program for its former employees, but dispute that this provides a basis for finding an intentional tort.

In *Neal,* plaintiffs brought an action against their former employer's successor for asbestos related injuries arising from their employment. The employer had retained a medical consultant to study the dangers of asbestos exposure and to propose an occupational health program. After studying the death certificates of former employees, the doctor informed defendant's predecessor, Philip Carey Corp., that there was an occupational risk of cancer. He also advised defendant that it should inform employees of the risks of asbestos exposure and establish a medical surveillance program. These recommendations were ignored and the doctor was terminated. The jury returned a verdict in favor of plaintiffs, finding that defendant had committed an intentional tort. Defendant moved for a judgment n.o.v., arguing that there was insufficient evidence from which the jury could find that Carey had committed an intentional tort. The court denied the motion and held that the evidence was sufficient for a jury to conclude that Carey intended to injure plaintiffs.

 We, however, decline to follow *Neal* as it is inconsistent with the controlling authority of *Wilson v. Asten-Hill Mfg. Inc., supra.* Fairly read, the allegations in *Neal* and the instant case, arise to no more than a claim that the defendants were aware of the risks that their employees could be injured by failure to maintain a medical surveillance program and that the defendants intentionally refused to implement such a program. Similar allegations were expressly rejected by the Third Circuit in *Wilson,* which held that an employer has not committed an intentional tort where he is aware of a hazardous situation and knowingly fails to remedy the situation. *See Higgins v. Clearing Machine Corp.,* 344 Pa.Super. 325, 496 A.2d 818 (1985). As one commentator explained:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a

hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

2A Larson, *The Law of Workmen's Compensation* § 68.13 (1975). Thus, the failure to provide a lifetime medical program, knowing that it poses a substantial risk to the employees' health, is insufficient, standing alone, to establish an intentional tort. In the present case, we find no evidence that defendant desired to injure plaintiffs or believed that the injuries were substantially certain to occur.

Plaintiffs have been provided with a remedy by the Workmen's Compensation and the Occupational Disease Acts and it is their exclusive remedy. Accordingly, we will grant defendant's motion for summary judgment and deny plaintiffs' summary judgment motions.